**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

JUNIOR MCLEOD,

v.                                          Civil Action No. CCB-21-2201

PLEASANTS CONSTRUCTION.

---

## MEMORANDUM

This employment discrimination action involves a dispute between Junior McLeod and his former employer, Pleasants Construction Inc. ("Pleasants"). Mr. McLeod, a Black man from Trinidad and Tobago, alleges Pleasants discriminated against him on the basis of race and ethnicity in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*.

Pending before the court is Pleasants's motion for summary judgment. *See* Def. Mot. Summ. J., ECF 40. Mr. McLeod, representing himself *pro se*, opposed the motion, Pl. Opp'n, ECF 43, and Pleasants replied in support of its motion, Def. Reply, ECF 44. The motion is ripe for disposition, and no hearing is necessary. *See* Local Rule 105.6. For the reasons set forth below, the court will grant Pleasants's motion for summary judgment.

## I.   BACKGROUND

Mr. McLeod was born in Trinidad and Tobago in 1963 and moved to the United States in the late 1980s. *See* Junior McLeod Dep. ("McLeod Dep.") 9:17–10:8, ECF 40-3. This lawsuit involves a four-month period in which Mr. McLeod worked for Pleasants, a construction company that provides a range of site development services. *Id.* at 35:19–36:2. Brian Green, an employee for Pleasants, hired Mr. McLeod to work as a truck driver for the company in July 2019. *Id.* at 13:3–5, 36:3–7.

1

Mr. McLeod's claim turns mainly on a series of workplace interactions he had in September 2019. On September 13, 2019, Mr. Selvin, another employee at Pleasants, allegedly told Mr. McLeod that "Brian Green hi[red] [Mr. McLeod] and he [Mr. Selvin] c[ould] f****** fire [him]." *Id.* at 69:12–14.[1] Later that same day, Dave Pleasant, who appears to have a managerial role or ownership interest in the company, climbed the steps of Mr. McLeod's truck and shouted that he "did not give a f*** who [McLeod] [is] [or] where [he] c[a]me from." *Id.* at 69:15–17. Mr. Pleasant emphasized that "his name was written on [McLeod's] truck." *Id.* at 69:18–19. Mr. McLeod contends these comments intimidated him. *Id.* at 69:10–11; *see also* Pl. Second Resp. to Interrog. at 1, ECF 40-9.

The second incident occurred on September 17, 2019. Mr. McLeod arrived at work on that day and was told by another Pleasants employee (identified only as "Shawn") that "there was no work" available. *See* McLeod Dep. at 70:15–20. Shawn directed Mr. McLeod to return home, and laughed as Mr. McLeod walked away. *Id.*

The next day, on September 18, 2019, Mr. McLeod returned to work and was assigned to drive to Bowie, Maryland. *Id.* at 71:2–8. Before arriving at his destination, Mr. McLeod noticed a tire on his truck was cut. *Id.* Brian Green, after learning of the defective tire, told Mr. McLeod to send him pictures of the damage and not to drive the truck. *Id.* at 71:15–17. Once he received pictures of the tire, Mr. Green informed Mr. McLeod that someone would come take care of the tire. *Id.* at 71:20–21. Although Mr. McLeod believes the damage was an attempt to "sabotage" his

---

[1] On the same day, Mr. McLeod alleges "a gentleman [with a] bald head walked up to the truck that [he] was operating and addressed me as 'YOU'" before telling Mr. McLeod that "Brian hire[d] you and I can f****** fire you." *See* McLeod Dep. at 72:16–22. Mr. McLeod contends that addressing someone as "YOU" is not a proper way to start a conversation. *Id.* at 73:6–13. It is unclear whether this incident is separate from the alleged interaction between Mr. McLeod and Mr. Selvin that day.

truck, he admits there is no evidence that someone from Pleasants damaged the tire. *Id.* at 71:9–14.

Amidst these interpersonal disputes were instances where Mr. McLeod admits he did not effectively complete various job-related tasks. For example, Mr. McLeod was not able to completely back a dump truck into a job site in September 2019. *Id.* at 92:18–94:1. And on November 18, 2019, Mr. McLeod made a mistake that ultimately damaged the company's vehicle. There, Mr. McLeod failed to roll back the tarp covering the bed of his truck, so when an operator dumped dirt into his truck, the load landed directly on the tarp. *Id.* at 89:1–6; *see also* Incident Report at 2, ECF 40-10. The weight of the dirt ripped the tarp and broke the tarp's supporting arms. *See* McLeod Dep. at 89:4–6. Pleasants documented the incident and suspended Mr. McLeod for three days. *See* Incident Report at 2. The incident report warned Mr. McLeod that "failure to improve and do his job properly will result in further disciplinary action up to and including termination of his employment." *Id.*

On November 27, 2019, Pleasants terminated Mr. McLeod's employment for failure to put air in the tires of his truck. *Id.* at 86:15–19, 87:3–7. Mr. Green, the same individual that hired Mr. McLeod, was the person that ultimately fired him. *Id.* at 36:4–7. Nearly five months later, on April 8, 2020, Mr. McLeod filed a complaint with the Equal Employment Opportunity Commission ("EEOC"). *Id.* at 75:6-10; 76:20-77:2. The EEOC issued Mr. McLeod a right to sue letter on August 16, 2021, ECF 1-4, and Mr. McLeod filed suit on August 27, 2021, ECF 1-1.

## II.  LEGAL STANDARD

Under Federal Rule of Civil Procedure 56(a), summary judgment should be granted if the movant shows "there is no *genuine* dispute as to any *material* fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a) (emphases added). "A dispute is genuine if 'a

reasonable jury could return a verdict for the nonmoving party.'" *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Dulaney v. Packaging Corp. of Am.*, 673 F.3d 323, 330 (4th Cir. 2012)). "A fact is material if it 'might affect the outcome of the suit under the governing law.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Accordingly, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment[.]" *Anderson*, 477 U.S. at 247–48. The court must view the evidence in the light most favorable to the nonmoving party, *Tolan v. Cotton*, 572 U.S. 650, 655 (2014) (per curiam), and draw all reasonable inferences in that party's favor, *Scott v. Harris*, 550 U.S. 372, 378 (2007) (citation omitted); *see also Jacobs v. N.C. Admin. Off. of the Cts.*, 780 F.3d 562, 568–69 (4th Cir. 2015). At the same time, the court must "prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993)).

While the court liberally construes filings by *pro se* plaintiffs, at the summary judgment stage, a *pro se* plaintiff "may not rest on [their] pleadings, but must demonstrate that specific, material facts exist that give rise to a genuine issue that must be tried before a jury." *Blair v. Ravenswood Vill. Health Ctr.*, 43 F. Supp. 2d 586, 586 (S.D. W. Va. 1998), *aff'd*, 173 F.3d 849 (4th Cir. 1999) (internal quotations and citation omitted).

### III. DISCUSSION

Title VII of the Civil Rights Act of 1964 makes it illegal for an employer to discriminate against an employee because of their race, color, religion, sex, or national origin. 42 U.S.C. §

2000e-2(a).[2] Courts apply a familiar burden-shifting framework to claims brought under the statute. *See Guessous v. Fairview Prop. Invs., LLC*, 828 F.3d 208, 216–17 (4th Cir. 2016). The three-step burden-shifting framework, as originally described in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), allows a plaintiff to bring an employment discrimination claim even when they lack direct evidence of intentional discrimination. *Guessous*, 828 F.3d at 216.[3] The plaintiff must first establish a prima facie case of employment discrimination. *Id.* If a plaintiff establishes a prima facie case, the "burden of production then shifts to the employer" to articulate a legitimate, nondiscriminatory reason for the adverse action. *Id.* If the defendants proffer such an explanation, the plaintiff must then show the stated justification is a pretext for impermissible discrimination. *Id.* (citing *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252–56 (1981)).

To establish a prima facie case of discriminatory treatment, a plaintiff must show: (1) membership in a protected class; (2) adverse employment action; (3) satisfactory job performance; and (4) that similarly situated employees outside the protected class received more favorable treatment. *Cepada v. Board of Educ. of Balt. Cnty.*, 814 F. Supp. 2d 500, 510 (D. Md. 2011).

Here, Mr. McLeod cannot satisfy the "satisfactory job performance" element of a prima facie case. There is undisputed evidence that Mr. McLeod failed to successfully back his truck into a job site. In a separate incident, Mr. McLeod mistakenly left his truck's tarp extended while

---

[2] Although Mr. McLeod may have implicitly asserted an age discrimination claim in prior filings, he has since clarified that he is not asserting an age discrimination claim. *See* McLeod Dep. 74:2–13.

[3] The *McDonnell Douglas* framework is one of two methods of proving discrimination under Title VII. Plaintiffs may also offer "direct or indirect evidence of discrimination under ordinary principles of proof." *Weathersbee v. Baltimore City Fire Dep't*, 970 F. Supp. 2d 418, 430 (D. Md. 2013) (quoting *Burns v. AAF–McQuay, Inc.*, 96 F.3d 728, 731 (4th Cir. 1996)) (internal punctuation omitted). Direct evidence demonstrates an explicit racial motivation tied directly to the adverse employment action. *Id.* at 430–31. As the court will explain, Mr. McLeod has offered neither direct nor indirect evidence of racial or ethnic discrimination in this case.

receiving a load of dirt, causing damage to a company vehicle. And he failed to inflate a tire on his truck, which could have caused significant property damage or harm to others. Mr. McLeod, through his own testimony, admitted to each of these incidents. He has provided no evidence of his satisfactory job performance, while Pleasants's motion is supported by at least one contemporaneously prepared record of Mr. McLeod's poor performance. Even if Mr. McLeod believes he was adequately performing, "it is the perception of the decision maker which is relevant, not the self-assessment of the plaintiff." *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 960–61 (4th Cir. 1996) (cleaned up). The court does "not sit as a kind of super-personnel department" weighing employment decisions in various industries. *See Thorn v. Sebelius*, 766 F. Supp. 2d 585, 595–96 (D. Md. 2011). With that in mind, the court need not determine whether Pleasants made the "right" decision in terminating Mr. McLeod; the relevant question is whether a reasonable jury could conclude that Pleasants perceived Mr. McLeod as performing at an acceptable level. The answer, for the foregoing reasons, is no.

Additionally, Mr. McLeod admits he does not know of any similarly situated employees outside of his protected class that were treated more favorably than him. *See* McLeod Dep. 84:4–20. No evidence suggests Mr. McLeod was replaced by someone of a different race or ethnicity. In fact, Mr. McLeod admitted that the negative interactions he had with his coworkers in September 2019 did not involve race or ethnicity. *Id.* at 70:21–22, 72:11–15, 73:1–10. Each comment, while hurtful, conveyed no message about Mr. McLeod's race or ethnicity. In the absence of any evidence that Mr. McLeod's white coworkers escaped such animosity, Title VII cannot provide Mr. McLeod relief. *See Boone v. Goldin*, 178 F.3d 253, 256 (4th Cir. 1999)

("Congress did not intend Title VII to provide redress for trivial discomforts endemic to employment.").[4]

Even if Mr. McLeod could establish a prima facie case, no evidence suggests Pleasants acted with a discriminatory pretext. Indeed, Mr. McLeod has failed to rebut the "same actor" theory advanced by Pleasants. "The Fourth Circuit has held that when the same person hires an employee, and then takes an allegedly negative employment action, there is a 'powerful inference' that the alleged action was not motivated by discriminatory animus." *McCain v. Waste Mgmt., Inc*., 115 F. Supp. 2d 568, 574 (D. Md. 2000) (citations omitted). Here, Mr. Green both hired and fired Mr. McLeod. The fact that Mr. McLeod was hired and fired within months helps underscore this point. *See Proud v. Stone*, 945 F.2d 796, 798 (4th Cir. 1991) ("[T]he fact that the employee was hired and fired by the same person *within a relatively short time span* . . . creates a strong inference that the employer's stated reason for acting against the employee is not pretextual.") (emphasis added).[5]

Mr. McLeod's response to the defendant's motion fails to provide a substantive rebuttal to most of the dispositive arguments. Instead, Mr. McLeod attempts to identify inaccuracies in the transcript of his deposition. *See* Pl. Resp. at 1–2, ECF 43. But under federal law, "[t]he transcript in any case certified by the reporter . . . shall be deemed prima facie a correct statement of the

---

[4] While unclear, Mr. McLeod does not appear to raise a hostile work environment claim. Even if he did intend to do so, such a claim would not survive summary judgment because there is little evidence suggesting his coworkers' comments were motived by racial or ethnic discrimination. *See Gilliam v. S.C. Dep't of Juvenile Justice*, 474 F.3d 134, 142–43 (4th Cir. 2007) (affirming grant of summary judgment to defendant where the plaintiff's allegations of hostile work environment "were not supported by any evidence other than [the plaintiff's] own general statements, which often lacked detail").

[5] This "same actor inference" applies equally to other adverse employment actions, not just discriminatory firing claims. *See, e.g., Evans v. Techs. Applications & Serv. Co*., 80 F.3d 954, 959 (4th Cir. 1996).

testimony taken." 28 U.S.C. § 753(b). "A [party's] bald assertion of error is insufficient to overcome the statutory presumption that the transcript is correct." *United States v. Hill*, 859 F. App'x 652, 653 (4th Cir. 2021). Mr. McLeod provides only general assertions claiming the transcript is inaccurate, without even claiming why the inaccuracies are sufficient to create a dispute of material fact. That is not enough.

Finally, to the extent Mr. McLeod advances a "retaliation" theory of discrimination, any such claim is barred by the lack of causation. To establish a prima facie case of retaliation under either Title VII or § 1981, a plaintiff must show: (1) he engaged in protected activity; (2) his employer took adverse action against him; and (3) a causal relationship existed between the protected activity and the adverse employment activity. *Guessous*, 828 F.3d at 217. Here, Mr. McLeod was terminated on November 27, 2019, and did not file a complaint with the EEOC until five months after his employment was terminated. So, Mr. McLeod's termination could not have been in retaliation for his EEOC complaint.[6]

## IV. CONCLUSION

For the reasons stated here, Pleasants Construction's motion for summary judgment will be granted. A separate Order follows.

| | |
|---|---|
| _____5/19/2023_____ | _____/s/_____ |
| Date | Catherine C. Blake |
| | United States District Judge |

---

[6] Mr. McLeod also claims he had a meeting with the EEOC in August of 2019, but he has no record of this meeting. Even if this meeting did occur, it would not satisfy the causation requirement because Mr. McLeod admitted his employer likely was not aware of the meeting. *See* McLeod Dep. at 78:1–16; 79:2–12, 81:8–12.